**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COLIN MATTHEW BOYLE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01936** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss and/or motion for summary judgment filed pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure. (Doc. No. 12.) For the reasons set forth below, the Court will grant the motion and direct the Clerk of Court to close this case.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Colin Matthew Boyle ("Plaintiff") is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") (Doc. No. 1 at 1, 5) and is currently incarcerated at United States Penitentiary Terre Haute ("USP Terre Haute") in Terre Haute, Indiana (id. at 28). On November 18, 2022,[1] while Plaintiff was incarcerated there, he commenced the above-captioned action by filing a pro se complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens") and the Federal Tort Claims Act ("FTCA"), concerning the alleged failure of staff members to protect him from physical and sexual assault by two (2) different cellmates

---

[1] Although the Court did not receive Plaintiff's complaint until December 6, 2022, his complaint "was placed in the institutional mail system . . . and handed to prison officials" on November 18, 2022 (Doc. No. 1 at 28), and, thus, is deemed filed as of that date. See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (noting that, under "[t]he federal prisoner mailbox rule[,] . . . a document is deemed filed on the date it is given to prison officials for mailing" (citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998)).

while he was incarcerated at United States Penitentiary Allenwood ("USP Allenwood") in Allenwood, Pennsylvania. (Id. at 1–3, 7–17.) Named as Defendants are the United States of America ("United States") and the following individuals, all of whom are corrections officers at USP Allenwood: Waldemar Kuczwalski ("Kuczwalski"); Alysia Handel ("Handel"); FNU Fryand ("Fryand"); and FNU Stover ("Stover"). (Id. at 5–7.) Also named as Defendants are "John and Jane Does 1–10," who "served" as supervisors, special housing unit ("SHU") lieutenants, special investigative supervision ("SIS") lieutenants, SIS technicians, an operations lieutenant, medical staff and/or psychology staff, and "equals or colleagues" of Defendants Fryand and Stover. (Id. at 7.)

After receiving Plaintiff's filing fee (Doc. No. 4), the Court deemed Plaintiff's complaint filed and directed the Clerk of Court to issue summonses with a copy of Plaintiff's complaint to the United States Marshal for service upon Defendant United States in accordance with Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Doc. No. 5.) The Court also directed the Clerk of Court to serve a copy of, inter alia, Plaintiff's complaint and waivers of the service of summons on the named individuals (i.e., Defendants Kuczwalski, Handel, Fryand, and Stover). (Id.)

On January 25, 2023, the waiver of service was returned executed by Defendants Kuczwalski and Handel (Doc. No. 9), but returned unexecuted by Defendants Fryand and Stover (Doc. No. 8).[2] The following day, Defendant United States was served, and the summons was returned executed. (Doc. Nos. 10; 11 (indicating that, on January 26, 2023, a copy of the

[2] In the unexecuted waiver, there are handwritten notes reflecting that the BOP was "unable to identify" Defendants Fryand and Stover. (Doc. No. 8 at 1–2); see also (Doc. No. 12 at 1 n.1 (explaining that the United States Attorney's Office does not represent Defendants Fryand and Stover, as the BOP has been unable to identify those individuals)).

summons and complaint was mailed to the United States Attorney General in Washington, D.C., and delivered on January 30, 2023).) Thereafter, on March 27, 2023, Defendants United States, Kuczwalski, and Handel (collectively, "Defendants") filed a motion to dismiss and/or motion for summary judgment. (Doc. No. 12.) Following an extension of time (Doc. Nos. 13, 16), Defendants filed a brief in support of their motion (Doc. No. 17), as well as a statement of material facts (Doc. No. 18) and corresponding exhibits (Doc. No. 18-1). In response, Plaintiff filed a brief in opposition (Doc. No. 19) and various exhibits (Doc. Nos. 19-1 through 19-7), to which Defendants filed a reply brief (Doc. No. 20).

### B. Factual Background

#### 1. Allegations in Plaintiff's Complaint[3]

In his complaint, Plaintiff generally asserts that, over the course of several weeks while he was incarcerated at USP Allenwood and housed in the SHU under protective custody status, he "was physically and sexually tortured on multiple occasions by two (2) separate prisoners[.]" (Doc. No. 1 ¶ 1.) In support of this assertion, Plaintiff sets forth the following allegations.

On or about January 2, 2018, until February 14, 2018, Plaintiff Inmate Moore was assigned to Plaintiff's SHU cell, and Inmate Moore began to "[i]mmediately . . . commit physical and sexual assault and batteries, and unwanted sexual harassment." (Id. ¶ 2.) Plaintiff "repeatedly complained" to SHU staff about Inmate Moore's conduct, but it was not until February 12, 2018 that USP Allenwood staff initiated a Prison Rape Elimination Act ("PREA") interview. (Id. ¶ 3.) Although the PREA investigation was ultimately "unfounded[,]" Plaintiff was removed from his cell and placed in a single cell. (Id. ¶ 4.) Plaintiff remained in a single

---

3 As discussed more fully below, Defendants' dispositive motion will be resolved on timeliness grounds. Thus, the Court need only set forth a brief summary of the allegations in Plaintiff's complaint.

cell until about March 29, 2018, when Inmate Marciglio was placed in his cell. (Id. ¶ 5.) Within hours of this placement, Plaintiff was "again subjected to physical and sexual assault and battery at an even more extreme nature at the hands of [Inmate] Moore[,]" including, but not limited to, "rape, sodomy, strangulation, forced starvation and other humiliations." (Id. ¶ 8.) USP Allenwood staff "repeatedly refused appropriate intervention, treatment, and care after [Plaintiff] adamantly begged for help." (Id. ¶ 9.)

On or about April 2, 2018, Plaintiff was transferred to the BOP's Federal Transfer Center in Oklahoma City, Oklahoma ("FTC OKC"). (Id. ¶ 10.) Upon his arrival to FTC OKC, Plaintiff "immediately advised staff of the incidents" that occurred at USP Allenwood." (Id.) Plaintiff was then transferred to USP Terre Haute, which "is designated as a special needs facility intended to house prisoners similarly situated to [Plaintiff], e.g. – sex offenders, gang dropouts, government witnesses, [and] individuals with gender dysphoria[.]"[4] (Id. ¶ 11.) On November 23, 2020, Plaintiff received a diagnosis for Post-Traumatic Stress Disorder ("PTSD"). (Id. ¶ 13.)

In connection with all of these allegations, Plaintiff asserts that he experienced "catastrophic and unnecessary pain and suffering" (id. ¶ 14) and that he continues to suffer from "debilitating psychological injuries and trauma as a direct result of Defendants[']" alleged wrongdoing at USP Allenwood (id. ¶ 15). Plaintiff asserts violations of his Fifth and Eighth Amendment rights under Bivens, as well as tort claims for negligence, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and

[4] Plaintiff is currently serving an aggregate sentence of sixty (60) years, which was imposed by the United States District Court for the Eastern District of Michigan, for convictions of production of child pornography and aiding and abetting in the production of child pornography. (Doc. No. 18 ¶ 1.) His expected release date, via Good Credit Time, is January 28, 2067. (Doc. No. 18-1 ¶ 3.)

negligent training and supervision. (Id. ¶¶ 16, 91–124, 152–158.) For relief, Plaintiff seeks, inter alia, compensatory and punitive damages. (Id. at 28.)

### 2. Material Facts Regarding Plaintiff's Administrative Tort Claims

In accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment. (Doc. No. 18.) Plaintiff did not file a counter statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement, as required by the Court's Local Rules. Thus, under the Court's Local Rules, Defendants' facts are deemed admitted because:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 13-cv-00387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in original) (citation omitted). In fact, Defendants advised Plaintiff in their statement of material facts that, "pursuant to Local Rule 56.1, the Court may deem all facts set forth in [their] statement admitted unless [Plaintiff] controvert[s] each fact with references to the record supporting [his] position." (Doc. No. 18 at 1.) Defendants' undisputed material facts reveal as follows.

The BOP maintains a computerized database of administrative tort claims filed, dating from October 2007 to the present. (Doc. No. 18 ¶ 9.) On June 22, 2022, Plaintiff filed an administrative tort claim on a Standard Form 95, Claim for Damage, Injury or Death ("SF-95"),

for the alleged injuries he suffered while incarcerated at USP Allenwood in 2018. (Id. ¶ 10; Doc. No. 18-1 at 17.) The regional office received Plaintiff's SF-95 on July 1, 2022. (Doc. No. 18 ¶ 10.) Before receiving a response, Plaintiff filed a nearly identical SF-95 on August 9, 2022, which the regional office received on August 19, 2022. (Id. ¶ 11; Doc. No. 18-1 at 20.) The BOP denied Plaintiff's administrative tort claim on October 14, 2022, for failure to submit his claim within the time restrictions contained in the applicable statutes and federal regulations. (Doc. No. 18 ¶ 12.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

**B. Rule 56 of the Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The

party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III. DISCUSSION

In their motion to dismiss and/or motion for summary judgment, Defendants argue that the Court should dismiss Plaintiff's Bivens claims as untimely because Plaintiff failed to file his

complaint within the applicable two (2)-year statute of limitations. (Doc. No. 17 at 3, 6–9.) Alternatively, Defendants argue that the Prison Litigation Reform Act ("PLRA") bars Plaintiff's Bivens claims due to his failure to exhaust administrative remedies before filing his complaint in federal court. (Id. at 3, 9–11.) Finally, Defendants argue that Plaintiff's tort claims under the FTCA likewise fail because he did not submit an administrative tort claim within two (2) years after the alleged incidents. (Id. at 3, 11–12.) The Court addresses Defendants' arguments in turn.

### A. Plaintiff's Bivens Claims

Plaintiff's complaint asserts Fifth and Eighth Amendment claims pursuant to Bivens. (Doc. No. 1 at 23–26.) In Bivens, the United States Supreme Court ("Supreme Court") held that there is an implied cause of action for money damages when a federal official, acting under color of his authority, violates the Fourth Amendment's prohibition against unreasonable searches and seizures. See Xi v. Haugen, 68 F.4th 824, 832 (3d Cir. 2023). In doing so, the Supreme Court recognized that "the Fourth Amendment does not in so many words" provide for an award of money damages as a consequence of its violation, but nevertheless explained that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." See Bivens, 403 U.S. at 396 (citation and internal quotation marks omitted).

Because a Bivens action is a judicially-created remedy, it does not carry its own statute of limitations. See Van Tu v. Koster, 364 F.3d 1196, 1198 (10th Cir. 2004) (citation omitted). As a result, federal courts generally borrow the most analogous statute of limitations in the state where the action arose. See Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers, 855 F.2d 1080, 1087 n.3 (3d Cir. 1998) (explaining that, "[b]ecause Congress has not

established a federal statute of limitations for Bivens actions, [courts] must look to the most analogous state statute of limitations" and concluding "that the state statute of limitations for personal injury claims" is the most analogous state statute of limitations for Bivens actions); see also Owens v. Okure, 488 U.S. 235, 239 (1989) (advising, in the context of 42 U.S.C. § 1983, that, when Congress has failed "to provide a specific statute of limitations[,]" federal courts are to apply the most analogous statute of limitations, unless doing so is inconsistent with federal law or policy (citation, internal citation, and internal quotation marks omitted)).

In Pennsylvania, there is a two (2)-year statute of limitations period for personal injury claims. See 42 Pa.C.S. § 5524. As such, Plaintiff's Bivens claims are subject to a two (2)-year statute of limitations. See Lassegue v. United States, No. 22-2475, 2022 WL 16629940, at *3 (3d Cir. Nov. 2, 2022), cert. denied, 143 S.Ct. 1092 (2023), (explaining that Bivens claims are governed by the state's statute of limitations for personal injury claims and that, in Pennsylvania, the relevant limitations period is two (2) years).

Although state law provides for the length of the statute of limitations applicable to Bivens actions, "[f]ederal law governs a cause of action's accrual date." See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citation omitted); Peguero v. Meyer, 520 F. App'x 58, 60 (3d Cir. 2013) (unpublished) (explaining that, "[w]hile state law provides the applicable statute of limitations, federal law controls when a Bivens claim accrues" (citing Wallace v. Kato, 549 U.S. 384, 388 (2007))). "Accrual is the occurrence of damages caused by a wrongful act—when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010) (citation and internal quotation marks omitted).

Particularly relevant here, a "cause of action accrues even though the full extent of the injury is not then known or predictable." See Wallace, 549 U.S. at 391 (citations and internal quotation marks omitted). Indeed, "[w]ere it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute. . . in the sole hands of the party seeking relief." See id. Thus, "[u]nder federal law, a cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based." See Montanez v. Sec'y Pennsylvania Dep't of Corr., 773 F.3d 472, 480 (3d Cir. 2014) (citations and internal quotation marks omitted); see also Kach, 589 F.3d at 634 (explaining that "[t]he determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known" (citation omitted)).

Applying these principles here, the Court agrees with Defendants (Doc. No. 17 at 7) that the allegations in Plaintiff's complaint establish that his Bivens claims accrued, at the latest, on April 2, 2018, when the alleged wrongdoing at USP Allenwood ended and Plaintiff was transferred to the BOP's FTC OKC. Because Plaintiff's Bivens claims accrued on April 2, 2018, Plaintiff was required to file his complaint in this Court no later than April 2, 2020. Plaintiff, however, did not file his complaint until November 18, 2022, well over two (2) years after the statute of limitations expired. (Doc. No. 1 at 28 (containing his complaint, which asserts that he delivered his complaint to prison officials for mailing on November 18, 2022).) As a result, his Bivens claims are barred by the statute of limitations.

In a seeming attempt to overcome this time-bar, Plaintiff's complaint alleges, and his brief in opposition to Defendants' motion contends, that his injury occurred on November 23, 2020, when he received his PTSD diagnosis. (Doc. Nos. 1 ¶¶ 13, 79; 19 at 2, 5, 7, 11.) In other

words, Plaintiff's argument is that the two (2)-year statute of limitations did not begin to run until that date. The Court, however, is unpersuaded. As set forth above, "a cause of action accrues when [a] plaintiff knew or should have known of the injury upon which the action is based." See Montanez, 773 F.3d at 480 (citations and internal quotation marks omitted). This is an objective inquiry. See Kach, 589 F.3d at 634 (explaining that "[t]he determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known" (emphasis added) (citation omitted)). Thus, any allegation by Plaintiff that he did not subjectively know of his "injury" until he received his PTSD diagnosis is unpersuasive. Indeed, a reasonable person in Plaintiff's alleged circumstances would have known, or at least should have known, of his injury by April 2, 2018. See Wallace, 549 U.S. at 391 (providing that "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable" (citations and internal quotation marks omitted)).[5]

As a result, the Court concludes that it is apparent on the face of Plaintiff's complaint that the statute of limitations bars his Bivens claims. Therefore, the Court will grant Defendants' motion to dismiss on this basis. See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (recognizing that "[t]he running of the statute of limitations is an affirmative defense . . . [and that] [a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint"

[5] In any event, Plaintiff's complaint suggests that he knew he had been harmed at USP Allenwood at the time of the alleged wrongdoing by Inmates Moore and Marciglio. Indeed, Plaintiff alleges that he "notified" and "complained" to staff at USP Allenwood concerning the initial alleged wrongdoing by Inmate Moore (Doc. No. 1 ¶¶ 43–45) and that he continued to notify and complain to staff concerning the subsequent alleged wrongdoing by Inmate Marciglio (id. ¶¶ 61, 72, 75). Plaintiff further alleges that, as soon as he arrived at the BOP's FTC OKC, he "immediately" informed staff of such alleged wrongdoing at USP Allenwood. (Id. ¶¶ 10, 77.)

(citation and internal citations omitted)). In light of this conclusion, the Court need not reach Defendants' alternative argument that the PLRA bars Plaintiff's Bivens claims because of his failure to exhaust administrative remedies before filing his complaint in this Court.

Before proceeding to Plaintiff's FTCA claims, the Court briefly addresses whether Plaintiff should be granted leave to amend his Bivens claims. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman, 371 U.S. at 182 (citation and internal quotation marks omitted). However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. In accordance with this standard, the Court finds that granting Plaintiff leave to amend his Bivens claims would be futile here. Quite simply, no amendment could remedy the legal deficiencies discussed above with respect to his Bivens claims. The Court will, therefore, deny Plaintiff leave to amend.

**B. Plaintiff's FTCA Claims**

In addition to his Bivens claims, Plaintiff asserts the following tort claims against Defendant United States under the FTCA: (1) ordinary negligence; (2) gross negligence; (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; and (5) negligent training and supervision. (Doc. No. 1 at 17–22, 26–27.) Generally speaking, "[t]he United States, 'as a sovereign, is immune from suit unless it consents to be sued.'" See S.R.P. ex

rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012) ("Abunabba") (quoting Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008)). The FTCA, however, authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1).

Accordingly, "[t]he FTCA is a 'partial abrogation'" of the United States' sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha v. United States, 115 F.3d 176, 179 (3rd Cir. 1997)), because it authorizes suits against the United States for such negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment. See 28 U.S.C. § 1346(b)(1); Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018) (stating that "[t]he FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment" (citations omitted)).

As explained by the Supreme Court, in order to state a claim under the FTCA, a plaintiff must plausibly allege the following six (6) elements of 28 U.S.C. § 1346(b):

> "'[1] [a claim] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"

See Brownback v. King, 592 U.S. 209, 212 (2021) (quoting FDIC v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b))).

In addition to plausibly alleging these elements, a plaintiff must also comply with statutory requirements of the FTCA. Specifically, the FTCA provides that a plaintiff must present his administrative claim "to the appropriate Federal agency[,]" and receive a final decision on the claim, before filing suit against the United States. See 28 U.S.C. § 2675(a) (providing that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" (emphasis added)); see also Simmons v. Himmelreich, 578 U.S. 621, 625 (2016) (referring to 28 U.S.C. § 2675(a) as the "exhaustion requirement"). The FTCA also provides that a plaintiff must adhere to certain deadlines:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

See 28 U.S.C. § 2401(b); Sconiers v. United States, 896 F.3d 595, 598 (3d Cir. 2018). As explained more simply by the Supreme Court, "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues and then brought to federal court 'within six months' after the agency acts on the claim." See United States v. Wong, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)); See Sconiers, 896 F.3d at 598–99. Absent grounds for equitable tolling, a plaintiff's failure to comply with these timeliness requirements bars his recovery in federal court. See Sconiers, 896

F.3d at 599–60; see also Wong, 575 U.S. at 420 (holding "that the FTCA's time bars are nonjurisdictional and subject to equitable tolling").

Here, and as discussed above, Plaintiff's complaint establishes that the alleged wrongdoing ended, and his claims accrued, on April 2, 2018. (Doc. No. 1 ¶¶ 10, 14, 53–54, 77.) The undisputed material facts reveal, however, that the BOP did not receive Plaintiff's administrative tort claim until July 1, 2022, more than four (4) years after his tort claims accrued. (Doc. No. 18-1 at 17.) In addition, Plaintiff has not shown that he is entitled to any equitable tolling. For instance, Plaintiff has not alleged that he was actively misled, that some extraordinary circumstance prevented him from timely filing a claim, or that he timely asserted his rights, but mistakenly did so in the wrong forum. See, e.g., D.J.S.-W. ex rel. Stewart v. United States, 962 F.3d 745, 750 (3d Cir. 2020) (providing that equitable tolling is available in situations where: "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;" "the plaintiff in some extraordinary way has been prevented from asserting [his] rights;" or "the plaintiff has timely asserted [his] rights mistakenly in the wrong forum" (footnote and citation omitted)). As a result, the Court agrees with Defendants (Doc. No. 17 at 3, 11–12) that they are entitled to summary judgment on Plaintiff's FTCA claims for failure to meet the two (2)-year deadline set forth by 28 U.S.C. § 2401(b).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and/or motion for summary judgment (Doc. No. 12) and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania